# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA SOUDER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>TRAVELERS, et al.,<br><br>　　　　　　Defendants. | CIVIL ACTION NO. 3:15-CV-02223<br><br>(MEHALCHICK, M.J.) |

## MEMORANDUM

Before the Court is a partial motion for summary judgment, filed on December 15, 2016 by Defendant Travelers Home and Marine Insurance Company ("Travelers H&M"). (Doc. 45). In its brief in support, Travelers H&M argues that Count IV of the complaint filed by Plaintiff Pamela Souder ("Souder"), wherein Souder seeks damages under Pennsylvania's bad faith provisions (Doc. 1-1, at 11), should be dismissed. (Doc. 46). For the reasons stated below, Defendant's motion is **GRANTED**. Count IV of the complaint (Doc. 1-1) is **DISMISSED**.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On June 9, 2014, agents of the Defendants inspected the home of the Plaintiff, Pamela Souder, to investigate damage that Souder alleges occurred as a result of snow buildup during February of 2014. (Doc. 56, ¶¶ 8-9). Souder, who filed a notice of claim with the Defendants on June 5, 2014, states that she noticed bowing in her roof as a result of the weight of the snow, with damage first materializing in bubbling and cracking of the paint and drywall. This led her to call in a contractor shortly after the snowfall, who assessed the weight of the snow as the cause of the cracking. (Doc. 56-23, at 4). Souder conveyed this to Travelers in her notice of

claim. (Doc. 56-3, at 9). Accordingly, Travelers classified the type of loss as "Weight of Ice and Snow." (Doc. 45-2, ¶ 6).

At the inspection, claim professional Katherine Prudhoe observed water damages to the drywall in the home's ceiling.[1] (Doc. 45-5, at 4). The same day, the type of loss was amended from "Weight of Ice and Snow" to water damage to the drywall from an ice damming event, although the parties dispute whether this change occurred prior or subsequent to Prudhoe's investigation. (Doc. 45-2, ¶ 11; Doc. 56-23, ¶ 11). As a result of the inspection, Travelers wrote a check to Souder for $1,287.07, reflecting the estimate for the damage, less Souder's $500 deductible. (Doc. 45-2, ¶ 14). Repairs were completed the same month. (Doc. 45-2, ¶ 16).

In October 2014, Souder noticed further damage to the ceiling and contacted Travelers again. (Doc. 45-2, ¶ 16). Travelers again conducted an inspection, this time with independent structural engineering consultant Dave Stakem. (Doc. 45-2, ¶ 17). During the inspection, Stakem, with permission, cut a hole in Souder's roof to inspect the supports and photographed their condition. (Doc. 45-2, ¶ 19). Following the inspection, Stakem issued an opinion stating the roof is lightly framed, normal for the age of the home;[2] the attic is not properly vented, causing heat and moisture buildup contributing to bowing; and that the sag in the roof is not attributable to recent structural movements caused by the weight of snow and ice. (Doc. 45-9, at

---

[1] Souder states the observable damage exceeded mere water damage to the drywall and included "cracks, separations and tape lifting off the drywall" and "were multiple and widespread." (Doc. 56, ¶¶ 9-10).

[2] The actual age of the home is also disputed.

4). Stakem further took note of the cracking drywall, attributing the cracks to seasonal shifts in the climate. (Doc. 45-9, at 3).

Travelers reviewed Stakem's findings with Souder. (Doc. 45-2, ¶ 22). In early December, Souder expressed disagreement with the factual findings, as well as indicated dissatisfaction with the June investigation by Travelers, which Souder claims was insufficient and contributed to the damage uncovered later. (Doc. 45-2, ¶ 23; Doc. 56-23, ¶ 23). The parties arranged for a second inspection to take place, again conducted by Stakem and in the presence of Souder's unit manager, Thomas Palmer.

On December 11, 2014, the second inspection occurred with Souder joined by Palmer, Stakem, Prudhoe, and Travelers' adjuster Richard Scimeca. (Doc. 45-2, ¶ 27). Travelers' notes state that Stakem explained that the damage was not attributable to ice and snow, nor was the home unsafe for habitation. (Doc. 45-5, at 10). Travelers again cut a hole in the roof in order to allow for closer inspection, writing a check to Souder for repairs to the roof. (Doc. 45-2, ¶ 29). Stakem renewed his findings from the November inspection. (Doc. 45-10).

On January 27, 2015, Travelers sent a letter to Souder explaining their decision to deny her claim, referencing the second Stakem investigation. (Doc. 45-11). The denial letter also included factual findings that: Souder's home was 114 years old; interior finishes and roofing were completed prior to moving in, and Souder did not make repairs to the drywall or roofing structure; the two inspections revealed bowing in the roof, causing a sag in the ceiling, resulting from ice damming during February of 2014; cracks in the drywall were caused by seasonable

temperature changes; and improper ventilation caused excessive heat and moisture buildup, causing the sag. (Doc. 45-11). Souder challenges nearly all of these conclusions, including: the age of the home;[3] pointing out that she had the roof supports, drywall, and wiring in that area of the home redone after purchasing the home;[4] the presence of water damage in the drywall; seasonal changes as the cause for cracking in the drywall; the lack of ventilation in the attic; and the cause of the sag and dip in the roof. (Doc. 56, at 9-10). Citing the conclusions that the roof was lightly framed improperly ventilated, Travelers denied coverage as they do not insure against loss "caused by wear and tear, marring, deterioration, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself." (Doc. 45-11). The letter also states that the contract further denies coverage for loss due to "faulty, inadequate or defective . . . design, specifications, workmanship, repair, construction, renovation, remodeling, grading, [or] compaction." (Doc. 45-11).

In February 2015, Souder hired an engineer to inspect the property. (Doc. 45-2, ¶ 33). She also appears to have retained counsel between February and March, who reached out to Travelers inviting them to revisit their denial of coverage based on the findings. Travelers

---

[3] Arguing land records show that between 1944 and 1947 the property went from being classified a parcel without improvements to containing a house. (Doc. 56, ¶ 41). Further, a policy application with AAA Insurance Agency provided by Travelers during discovery shows that the frame of a house was constructed in 1955. (Doc. 56-11). Thus, Souder argues, the home was somewhere between 59-70 years old at the time of the inspections, not 114 as stated in the basis for denying coverage.

[4] During her deposition, Souder testified that she had the house reconstructed in October 2008. (Doc. 56, ¶ 42). This reconstruction included new drywall and collar ties for the roof (as photographed by Stakem in the inspections) being installed at that time. (Doc. 56-12).

requested the reports and estimates for review. (Doc. 45-2, ¶¶ 35-36). Counsel provided the information as requested, and the parties arranged for a third inspection to take place on May 20, 2015. (Doc. 45-2, ¶ 37). On the date of the inspection, a dispute arose over the use of video to document the investigation. As a result, the inspection did not take place. (Doc. 45-2, ¶ 38).

On June 29, 2015, Souder sued Travelers and Travelers H&M in the Schuylkill County Court of Common Pleas, filing her complaint on November 5, 2015. (Doc. 1-1). The Defendants removed to this Court on November 19, 2015. (Doc. 1). Following discovery, the Defendants filed the instant motion for partial summary judgment, alleging that Souder cannot establish the existence of bad faith in their decision to deny coverage. (Doc. 45). While the motion was pending, the parties consented to proceed before the undersigned on January 31, 2017. (Doc. 52). The parties filed their respective brief in opposition (Doc. 56-23) and reply (Doc. 67) on February 10 and April 28, 2017 respectively, rendering the motion ripe for review.

II. **STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

III. **DISCUSSION**

Under 42 Pa. C.S.A. § 8371:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%; (2) Award punitive damages against the insurer; (3) Assess court costs and attorney fees against the insurer.

In insurance disputes, bad faith is defined as:

> any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For the purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (quoting Black's Law Dictionary 139 (6th ed. 1990)).

To succeed on a claim asserting bad faith under the Pennsylvania statute, the insured must show (1) that the insurer did not have a reasonable basis for denying benefits under the relevant policy; and (2) that thte insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim. *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). Both elements of bad faith must be proven by "clear and convincing evidence" and "not merely insinuated." *Oehlmann v. Metro. Life Ins. Co.*, 644 F.Supp.2d 521, 527 (3d Cir. 2007) (citations omitted); *Terletsky*, 649 A.2d at 125. Accordingly, "the insured's burden in opposing a summary judgment motion brought by the insurer is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.'" *Oehlmann*, 644 F.Supp.2d at 528 (quoting *Babayan*, 430 F.3d at 137). "[A]n insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its actions." *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011) (citing *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995)).

In Count IV, Souder argues that Travelers H&M did not conduct a proper inspection in response to her claim of loss. (Doc. 1-1, ¶ 51). Souder further alleged that Travelers H&M refused to accept evidence of causation or that discredited their conclusions. (Doc. 1-1, ¶¶ 54-55). In its partial motion to for summary judgment, Travelers H&M argues that it conducted a thorough investigation of the claim and reached a reasoned coverage determination, which was based upon the independent inspections conducted by Stakem Engineering. (Doc. 46). It further argues that "[n]o facts or documents developed in discovery contradict the findings of independent engineers" used for the basis of its decision. (Doc. 46, at 9).

Souder counters that the initial inspection was merely superficial and inadequate. (Doc. 56-23, at 4). She also argues the conclusions of Stakem were based on inaccurate facts, disregarded the 2008 reconstruction, and did not properly address the factors cited by Souder as the cause for the sag in the roof. (Doc. 56-23, at 5). Lastly, Souder insinuates that Travelers frequently retained Stakem which would prejudice Stakem's findings. (Doc. 56-23, at 5). Souder's contention is that Travelers switched the cause of loss prior to the inspections and ensured that subsequent investigations corroborated their position.

In terms of the progression of the claim, it cannot undisputed that: Travelers acted promptly in responding to Souder's claim in June of 2014, sending an investigator within days of receiving notice of the claim; reopened the claim upon receiving notice in October of further damage; and hired an independent contractor[5] to conduct multiple assessments on the cause of damage. Only after the conclusion of these facially independent investigations did Travelers deny coverage under the terms of the policy.

Thus, the crux of Count IV seems to turn on whether the reports by Stakem provided a reasonable basis for Travelers' denial of coverage. "The bad faith insurance statute is concerned with the duty of good faith and fair dealing." *Kojsza v. Scottsdale Ins. Co.*, 992 F.Supp.2d 403, 409-10 (M.D. Pa. 2014) (quoting *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 883 (Pa. 2007)). "Mere negligence or bad judgment is not bad faith." *Kojsza*, 992 F.Supp.2d at 409 (quoting *Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1171 (Pa. Super. Ct. 2012)). Regardless of whether or

---

[5] Souder's insinuation that Stakem was not truly independent given the frequency of retention by Travelers and meetings with the insurer is not supported by evidence in the record.

not the findings of Stakem (or Prudhoe in her initial investigation in June) were accurate in fact, judgments contrary to the eventual conclusion of cause are not inherently indicative of bad faith. Both of Stakem's investigations involved cutting holes in Souder's roof to inspect the cause of the sagging up close. The Court is without evidence to question the independence of Stakem's investigation and subsequent report. As Stakem's findings attributed the sag to light framing and improper ventilation appear sufficiently independent, Travelers had a reasonable basis for denying coverage under the provisions cited in its letter denying coverage. Whether these findings are disproven through the adjudicative process by other experts or evidence does not undermine their ability to provide a reasonable basis for denying coverage. Even if Travelers' eventual denial was predicated upon an incorrect interpretation of the insurance policy, it does not rise to the level of bad faith. *See Bostick v. ITT Hartford Group, Inc.*, 56 F.Supp.2d 580, 587 (E.D. Pa. 1999).

IV. **SUMMARY**

Even construing the record before it in the light most favorable to the nonmoving party, the Court finds that Souder cannot meet her burden of establishing that Travelers H&M denied coverage without a reasonable basis for doing so. To the contrary, the record reflects that Travelers H&M acted promptly upon claims, retained an independent contractor to conduct multiple investigations into the cause of loss, and relied upon the reports from independent contractors in finding that the loss was not covered. These actions constitute a reasonable basis for denying coverage, notwithstanding any findings on the accuracy of the reports and interpretations of the insurance contract.

For the above rationale, Travelers H&M's motion for partial summary judgment (Doc. 45) is **GRANTED**. Absent evidence that the denial of coverage did not have a reasonable basis, Count IV of Souder's complaint must be **DISMISSED**.

An appropriate Order follows.

Dated: July 5, 2017                                          *s/ Karoline Mehalchick*
                                                             **KAROLINE MEHALCHICK**
                                                             **United States Magistrate Judge**